Argued and submitted November 3, 2003, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings September 29, 2005

## CITY OF NYSSA,
*Respondent on Review,*

*v.*

## Sally A. DUFLOTH,
*Petitioner on Review.*

(CC A00080112; CA A113180 (Control))

## CITY OF NYSSA,
*Respondent on Review,*

*v.*

## Duane L. SMITH,
*Petitioner on Review.*

(A00080111; A113181; SC S49963)
(Cases Consolidated)

121 P3d 639

Laura Graser, Portland, argued the cause and filed the brief for petitioners on review.

James N. Westwood, of Stoel Rives LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Gary Kiyuna, of Stunz, Fonda, Kiyuna & Horton, Nyssa.

Bradley J. Woodworth and Lake James Perriguey, of Bradley J. Woodworth & Associates, PC, Portland, filed the briefs for *amicus curiae* Association of Club Executives.

James K. Neill and Jennifer Williamson, of Davis Wright Tremaine LLP, Portland, filed the briefs for *amicus curiae* Danzine.

Chin See Ming and Julia E. Markley, of Perkins Coie LLP, Portland, filed the brief for *amici curiae* ACLU Foundation of Oregon, Inc., and White Bird.

Carmel E. Bender, Portland, filed the brief for *amicus curiae* Lola Greene Baldwin Foundation for Recovery.

Robert M. Atkinson, Assistant Attorney General, Salem, filed the brief for *amicus curiae* State of Oregon.

Tracy Pool Reeve, Senior Deputy City Attorney, City Attorney's Office, Portland, filed the brief for *amici curiae* City of Portland and the League of Oregon Cities. With her on the brief was Christy K. Monson, Salem.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

GILLETTE, J.

De Muniz, J., dissented and filed an opinion.

---

** Kistler, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

In this criminal case, the defendants, owners of a nude dancing club, were convicted of violating a local ordinance that required, among other things, that entertainers at such clubs remain at least four feet away from the patrons. Defendants appealed their convictions to the Court of Appeals, arguing that the ordinance was facially unconstitutional as an unlawful restraint on expression in violation of Article I, section 8, of the Oregon Constitution.[1] A divided, en banc Court of Appeals affirmed the ruling of the lower court. *City of Nyssa v. Dufloth / Smith*, 184 Or App 631, 57 P3d 161 (2002). We allowed review and, for the reasons set out below, now reverse the decision of the Court of Appeals.

The pertinent facts are not in dispute. Defendants are the owners and managers of "Miss Sally's Gentlemen's Club" in the City of Nyssa. The club features nude female dancers. The club admits patrons 18 years of age and older and does not serve alcohol.

In February 2000, a police officer responded to a complaint at the club and, upon entering, saw a nude dancer kneeling against a barrier surrounding the stage, shaking her hair in a patron's face. The dancer was less than a foot away from the patron. The officer arrested defendants for violating a section of the Nyssa City Code (NCC),[2] which provides, in part:

"5.10.130: Every adult concession shall comply with the following standards of operation and the following standards of conduct must be adhered to by employees and entertainers of all adult concessions:

"* * * * *

"(17) No entertainer is permitted to be unclothed or in less than opaque and complete attire, costume or clothing, so as

---

[1] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

[2] Since the time of defendants' arrest, the City of Nyssa has amended the applicable city code provisions in ways that do not affect our analysis in this case.

to expose to view any portion of the pubic region, buttocks, genitals, vulva, or anus, except removed at least four feet (4') from the nearest patron."[3]

The Nyssa Municipal Court convicted both defendants of violating that city code provision. Defendants appealed those convictions to the Malheur County Circuit Court, where they demurred to the charges, asserting that the city ordinance is an unconstitutional restriction on expression. The circuit court denied the demurrers, conducted a trial *de novo*, convicted defendants of the violations, and fined them each $185. Defendants appealed their convictions to the Court of Appeals.

In the Court of Appeals, defendants argued that the city's ordinance requiring entertainers in "live adult entertainment establishments" to remain four feet away from patrons impermissibly restricts expression in violation of Article I, section 8, of the Oregon Constitution and, therefore, that the circuit court erred in denying their demurrers. The city countered that the Court of Appeals recently had decided, in *State v. Ciancanelli*, 181 Or App 1, 45 P3d 451 (2002), that nude dancing is not protected expression under the state constitution. The city also argued that the ordinance at issue is not an impermissible restriction on expression because it does not prevent or interfere with the dancers'

---

[3] "Adult concession" is defined as, among other things, a "live adult entertainment establishment." NCC § 5.10.020(1). A "live adult entertainment establishment" is defined, in turn, as:

"any building or portion of a building to which any member of the public is invited or admitted and where any employee or entertainer, on a regular basis or as a substantial part of the premises activity, conducts live adult entertainment."

NCC § 5.10.020(3). In addition, "entertainer" is defined as "any person who provides live adult entertainment within an adult concession as defined in this Section whether or not a fee is charged or accepted for entertainment." NCC 5.10.020(5).

" 'Live adult entertainment' means:

"any exhibition, performance or dance of any type which contains:

"* * * * *

"(b) any display of specified anatomical areas."

NCC § 5.10.020(2). Finally, "specified anatomical areas" is defined to include, among other things, less than completely or opaquely covered buttocks and breasts. NCC § 5.10.020(13).

message; rather, the ordinance is directed at preventing sexual activity and, to that end, merely imposes a reasonable restriction on conduct. Finally, the city argued that the ordinance did not restrict speech at all, but only restricted conduct.

The Court of Appeals majority concluded that it need not decide whether the ordinance in this case restricts expression or is aimed merely at conduct. According to the majority, even if the ordinance is directed at expression, it is not unconstitutional, because nude dancing is not expression protected under Article I, section 8, of the Oregon Constitution. In reaching that conclusion, the Court of Appeals agreed with the city that the court's earlier decision in *Ciancanelli* was dispositive.

In *Ciancanelli*, the defendants were convicted of, among other things, violating a state statute, ORS 167.062(3), which makes it a crime to "direct, manage, finance or present a live public show in which the participants engage in * * * sexual conduct." The defendants in that case had argued that that statute is unconstitutional because it is directed, by its terms, at expression.

In its opinion in *Ciancanelli*, the Court of Appeals considered the constitutionality of the statute in light of this court's opinion in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). In *Robertson*, this court explained that Article I, section 8, contains a broad prohibition—"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever"—together with an exception—"but every person shall be responsible for the abuse of this right." According to the court in *Robertson*, that prohibition "forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Robertson*, 293 Or at 412. However, also according to the court, the sweeping prohibition set out in Article I, section 8, contains an exception for certain kinds of restrictions on expression. Under that exception, a law would survive a constitutional challenge if "the scope of the restraint [on expression] is wholly confined within some historical exception that was

well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *Id.*

Using that analytical framework for analyzing Article I, section 8, cases, the Court of Appeals in *Ciancanelli* reviewed the line of laws and cases dating back to the seventeenth century dealing with public nudity and public sexual conduct, and concluded that ORS 167.062 falls within a "well-established" historical exception to the Oregon Constitution's general prohibition against laws restricting expression. *Id.* at 19. In light of that conclusion, the Court of Appeals held that, although the statute at issue is directed at expression, it does not violate Article I, section 8. 181 Or App at 27.

In the present case, the Court of Appeals reasoned that the city's nude dancing ordinance is, for purposes of constitutional analysis, indistinguishable from the nude dancing statute at issue in *Ciancanelli*. Accordingly, the court concluded that the Nyssa ordinance likewise does not violate Article I, section 8, even if it is aimed at expression. *Dufloth / Smith*, 184 Or App at 639.

Before this court, defendants argue that the ordinance at issue here is directed at expression and that the Court of Appeals misapplied the historical exception doctrine announced in *Robertson* when it concluded that laws dealing with nude dancing fall within an historical exception. Defendants argue that this court did not intend the "historical exception" to include that type of restriction on expression; rather, the historical exception includes only laws against "well-established conventional crimes," such as forgery, fraud, and perjury. The city, for its part, continues to contend that the ordinance's four-foot rule regulates unprotected conduct and not expression but that, even if the ordinance were held to restrain expression, it nonetheless either legitimately focuses on forbidden effects or falls within the historical exception from Article I, section 8, protection identified by the Court of Appeals in *Ciancanelli*.

This court allowed review in *Ciancanelli* and heard argument in that case on the same day that we heard oral argument in the present case. Our decision in *State v.*

*Ciancanelli*, 339 Or 282, 121 P3d 613 (2005), informs our analysis in the present case. Accordingly, we briefly summarize our conclusions in *Ciancanelli*.

In *Ciancanelli*, as in the present case, the parties' arguments principally concern the correct application of the *Robertson* framework to the facts of the case. On review in this court, however, the state also presented an argument that the analytical origins of the *Robertson* framework were unsound and that this court should jettison *Robertson* and reexamine Article I, section 8, using the systematic approach for analyzing original provisions of the Oregon Constitution that the court described in *Priest v. Pearce*, 314 Or 411, 840 P2d 65 (1992). Under the *Priest* paradigm, the court searches for the intent of the people who drafted and adopted the original provision of the constitution. In so doing, the court examines the wording of the constitutional provision, the case law surrounding it, and the historical circumstances leading to its adoption. *Id.* at 415-16.

In *Ciancanelli*, this court agreed to reexamine Article I, section 8, using the *Priest* methodology. We chose to do so, however, not because we agreed with the state's premise respecting *Robertson's* shortcomings—in fact, we did not agree with that premise—but because the state's extensive arguments respecting Article I, section 8, focused on a part of that provision that was not central to this court's decision in *Robertson*. *Ciancanelli*, 339 Or at 291.

In our substantive analysis, we stated that Article I, section 8, announces a broad and sweeping right of an individual to free expression. As we stated in *Ciancanelli*, the words are so sweeping, in fact, that "it appears to us to be beyond reasonable dispute that the protection extends to the kinds of expression that a majority of citizens in many communities would dislike—profanity, blasphemy, pornography—and even to physical acts, such as nude dancing or other explicit sexual conduct, that have an expressive component." *Id.* at 311.

Analysis of the second part of Article I, section 8, the so-called "abuse" clause, was more difficult, however. Based on the historical evidence, we noted that the framers might have intended that phrase to be construed in either of two

ways: (1) to convey, on the one hand, that a legislature has full authority to punish, after the fact, any speech that it deems to be abusive; or (2) to convey, on the other hand, that a legislature may punish or interfere with expression only to the extent that the expression causes injury to the fundamental, "natural" rights of other individuals. *Id.* at 312. We further noted that, because there appeared to be no sound basis for choosing one of those possible meanings over the other, the state would have to demonstrate that *Robertson* is incompatible with both of those possible meanings in order to meet its burden of showing that the *Robertson* framework is contrary to the framers' intent. 339 Or at 313. We concluded that the state had not met and could not meet that burden, because *Robertson* is fully compatible with the latter, "natural rights" approach. Ultimately, we announced that we would continue to use the *Robertson* framework to analyze challenges brought under Article I, section 8. 339 Or at 314-15.

We now turn to the task of applying the *Robertson* framework to the issue before us—namely, whether the city's four-foot ordinance violates Article I, section 8. Under that framework, we first determine whether the ordinance is directed by its terms at restraining or restricting speech or expression.

This court previously has considered whether laws purporting merely to restrict the manner of expression, without prohibiting expression entirely, were "directed at expression" for purposes of an Article I, section 8, analysis. In *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988), for example, this court addressed a zoning ordinance that required "adult" bookstores to be located at least 500 feet from any residential zone and, in some cases, at least 1,000 feet from any other adult business. The ordinance did not prohibit all adult bookstores from locating within the city limits, nor did it purport to limit the content of the printed material for sale in the stores. Nonetheless, this court held that, in light of the fact that "the same structure devoted to essentially the same kind of use, retailing reading or viewing materials or showing films, becomes a prohibited use under the ordinance simply because the quantity of 'adult' merchandise increases from a minor to a 'substantial' or

'significant' portion," *id.* at 181, that ordinance was "flatly directed against one disfavored type of pictorial or verbal communication." *Id.* at 184. Similarly, in *Moser v. Frohnmayer*, 315 Or 372, 845 P2d 1284 (1993), this court held that a law that prohibited the use of "an automatic dialing and announcing device to solicit the purchase of any realty, goods, or services" was directed at expression. The court held that, insofar as the law was applicable only to those messages soliciting commercial services or goods but did not apply to any other type of message, the law "restricts expression because it is directed at a specific subject of communication, excluding some speech based on the content of the message." *Id.* at 376. And, finally, we held that, because the statute at issue there "prohibits and criminalizes [certain sexual] acts *only* when they occur in an expressive context, *i.e.*, in a 'live public show[,]' * * * we cannot avoid the conclusion that the statute is directed primarily, if not solely, toward the expressive aspect of the conduct that it describes. That is, the statute is one restraining free expression." *Ciancanelli*, 339 Or at 320-21 (emphasis in original).

The ordinance at issue in this case provides that "[n]o entertainer is permitted to be unclothed or in less than opaque and complete attire, costume or clothing, so as to expose to view any portion of * * * [certain body parts], except removed at least four feet (4') from the nearest patron." NCC § 5.10.130(17). "Entertainer" is a defined term and means "any person who provides live adult entertainment within an adult concession." *Id.* § 5.10.020(5). "Live adult entertainment" means "any exhibition, performance or dance of any type which contains * * * any display of specified anatomical areas," including, among other things, less than completely or opaquely covered buttocks and breasts. *Id.* § 5.10.020(2)(b); § 5.10.020(13). In addition, the ordinance specifically excludes from the scope of its reach, among other things, plays, operas, musicals, classes, seminars, exhibitions and performances that are "not obscene." *Id.* § 5.10.150(1). Thus, by its terms, the ordinance applies only to one disfavored type of communication (nude performances) in one disfavored type of establishment (one that regularly features that type of entertainment). In that way, it is indistinguishable from the laws and ordinances at issue in *Tidyman*,

*Moser*, and *Ciancanelli*, all of which this court held to be directed at expression. We hold that Nyssa City Code, section 5.10.130(17), restrains free expression.

Having concluded that the city's four-foot ordinance is directed by its terms at expression, we turn to consider whether it nonetheless is permissible because it is "wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *Robertson*, 293 Or at 412. As noted, the Court of Appeals concluded that the city's rule falls within the same "well-established" exception that it had found and on which it relied in its *Ciancanelli* decision—an exception for laws regulating public sexual conduct. *City of Nyssa*, 184 Or App at 638 (citing historical exception analysis in *Ciancanelli*, 181 Or App at 16-19).

However, this court today has rejected the Court of Appeals' *Ciancanelli* decision, including its conclusion that there is a well-established historical exception within the meaning of the *Robertson* framework for laws regulating live public shows involving displays of nudity and sexuality. *Ciancanelli*, 339 Or at 321-22.[4] The city does not suggest any other basis for finding the present law to fall within a historical exception to the prohibition of Article I, section 8, and we find none.

In summary, we conclude that Nyssa City Code, section 5.10.130(17), is a law that is directed by its terms and in its actual focus on restraining a particular variety of expression, and that it does not fall within any well-established historical exception to the prohibition against such laws in Article I, section 8. It is unconstitutional on its face. Accordingly, defendants' convictions for violating the ordinance must be reversed.[5]

---

[4] We explained in *Ciancanelli* that, contrary to the Court of Appeals' view, a historical exception cannot be established with respect to laws directed at regulating the portrayal of sexual matters merely by showing that similar regulations were longstanding at the time of the adoption of Article I, section 8, and continued to exist in Oregon after the adoption of that provision, if those historical criminal prohibitions were directed exclusively at protecting the hearer or the viewer from a disfavored message. *Ciancanelli*, 339 Or at 318-19, 321-22.

[5] As this court pointed out in *Ciancanelli*, the legislature constitutionally may enact laws designed to prohibit or punish conduct that amounts to prostitution or

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DE MUNIZ, J.,** dissenting.

For many of the reasons expressed in my dissent in *State v. Ciancanelli*, 339 Or 282, 121 P3d 613 (2005), I also dissent in this case. Specifically, I would conclude, on two grounds, that the ordinance at issue in this case is constitutional under the *State v. Robertson*, 293 Or 402, 649 P2d 569 (1983) framework. First, the ordinance does not constrain either the subject or the content of nude dancing. Limiting proximity of the dancers is simply not limiting expression.

Second, the four-foot proximity ordinance focuses legitimately on forbidden effects. The Nyssa City Council has legislatively determined that "[t]he regulation of distances at which live performances occur from the patrons [is] directed at the elimination of sexual conduct or other adverse secondary effects, unrelated to the protected expression of the performer." In my view, the proximity ordinance is tailored to address an effect (sexual conduct or harm to dancers) rather than an expression of opinion.

I therefore respectfully dissent.

---

other criminal activity, but Article I, section 8, precludes the legislature from using limitations on speech or expression as a substitute for regulating that conduct directly. *Ciancanelli*, 339 Or at 322 n 31. In the present case, the city constitutionally can regulate such conduct as sexual contact between performers and patrons, and the fact that an individual uses speech or expression in the course of that conduct would not immunize the individual from prosecution. However, that is not what the ordinance at issue here does. The four-foot ordinance does not specifically preclude or even refer to sexual contact between performers and patrons. Rather, as discussed, it simply restrains certain kinds of expression in certain kinds of establishments.