Argued and submitted January 21, affirmed August 5, 2015, petition for review denied January 14, 2016 (358 Or 529)

STATE ex rel ICON GROUPE, LLC,
*Plaintiff-Relator/Respondent,*

*v.*

WASHINGTON COUNTY,
*Defendant-Appellant.*

Washington County Circuit Court
C107602CV, C106508CV;
A150716 (Control), A150717

359 P3d 269

Christopher A. Gilmore, Senior Assistant County Counsel, argued the cause and filed the briefs for appellant.

Julia E. Markley argued the cause for respondent. With her on the brief were Erick J. Haynie, Misha Isaak, and Perkins Coie LLP.

Before Lagesen, Presiding Judge, and Flynn, Judge, and De Muniz, Senior Judge.

LAGESEN, P. J.

**LAGESEN, P. J.**

This case concerns the land-use mandamus process authorized under ORS 215.429 when a county does not take final action on an application for a development permit within 120 days after the application is deemed complete. The applicant, Icon Groupe, LLC (Icon), sought permits from Washington County to construct 17 freestanding signs pursuant to a section of the county's code that exempted "safety signs" from otherwise applicable restrictions on the size, height, and placement of signs. The county's planning director initially denied all 17 applications, concluding that Icon could not rely on the exemption for safety signs because that exemption was content based and therefore violated free speech protections under Article I, section 8, of the Oregon Constitution. Icon appealed each of those denials to the county hearings officer, but the county did not act on the appeals within the applicable timeframes.

Icon then petitioned the circuit court for a writ of mandamus pursuant to ORS 215.429, which provides that, where the county has failed to act on an application in a timely manner, "[t]he court shall issue a peremptory writ [to compel approval of the permit] unless the governing body or any intervenor shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as those terms are defined in ORS 197.015." In response to the mandamus petition, the county defended its failure to act on the applications on the same ground that its planning director had articulated when denying the applications: that the exemption for "safety signs" was unconstitutional and therefore provided no basis for approving Icon's proposed signs. The circuit court rejected the county's arguments, ruling that the county's concerns about the constitutionality of its own development code were not a sufficient basis for denying mandamus relief under ORS 215.429(5). For the reasons that follow, we affirm the circuit court's judgment and conclude that Icon is entitled to issuance of permits to build the "safety signs" proposed in its applications.

## I. BACKGROUND

The facts relevant to this appeal are procedural in nature and are undisputed. Icon, which is an outdoor

advertising company, filed 11 permit applications with the county on March 19, 2010, to construct freestanding signs at various sites within the county. Three months later, on June 10, 2010, Icon filed six more applications for similar signs. All 17 applications sought approval for signs under Washington County Development Code (CDC) section 414-5.9, which addresses "safety signs"; the applications proposed signs with 14-foot by 48-foot display faces, and the applications included illustrations of those proposed signs with messages like "Celebrate the Holiday Safely—Happy Memorial Day." (An example of one of the illustrations is included in an appendix to this opinion.) The county did not notify Icon that any information was missing from the applications; as a result, the applications were deemed complete on the dates that they were filed (March 19 and June 10). *See* ORS 215.427 (describing when applications are deemed complete for purposes of the local government's obligation to take final action on a permit application).

The code provision that Icon invoked, CDC section 414-5.9, was one of multiple exemptions from certain size, height, placement, and other restrictions on signs that were set forth elsewhere in the development code. CDC section 414-5, titled "Exemptions and Supplemental Criteria," provided, in part:

> "The following signs are exempted from development permit requirement [*sic*] and from the standards set forth above; however, a permit may be required as determined by the Building Official.

> "* * * * *

> "414-5.9 Safety Signs

> "Danger signs, trespassing signs, warning signs, traffic signs, memorial plaques, signs of historical interest, holiday signs, public and service information signs such as rest rooms, mailbox identification, newspaper container identification."

Although Icon's applications on their faces appear to propose permanent signs conveying a Memorial Day salutation, the county did not dispute (and still does not dispute) that such permanent Memorial Day signs qualified as "holiday signs" for purposes of the "safety sign" exemption in CDC

section 414-5.9.[1] Nonetheless, the county's planning director denied each of Icon's proposed applications. In the notices of denial, the planning director explained that Article I, section 8, of the Oregon Constitution[2] "precludes application of the content based exemptions cited in the application," and that, without an exemption, the proposed signs exceeded the otherwise applicable size and height restrictions for their described locations.

Icon timely appealed those denials to the county hearings officer, as allowed by the county code. However, the county did not act on the appeals. Instead, while Icon's appeals were pending, the County Board of Commissioners adopted a new ordinance to amend the county's code to eliminate CDC section 414-5.9 and other parts of the sign code that allowed the county to discriminate based on the content of proposed signs. *See generally Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 132 P3d 5 (2006) (explaining ways in which content-based restrictions on signs violate Article I, section 8).

Meanwhile, Icon pursued a statutory remedy to compel the county to issue the requested sign permits. Under ORS 215.427, subject to exceptions not applicable here, "the governing body of a county or its designee shall take final action on an application for a permit, limited land use decision or zone change, including resolution of all appeals under ORS 215.422, within 120 days after the application is deemed complete." If the county fails to comply with that statute, a related statute, ORS 215.429(1), authorizes the applicant to "file a petition for a writ of mandamus under ORS 34.130 in the circuit court of the county where the application was submitted to compel the governing body or its designee to issue the approval." Subsection (5) of ORS 215.429 then describes the court's role in that type of mandamus proceeding:

---

[1] The county was concerned that Icon ultimately intended to use the signs for advertising once they were constructed, but the county did not dispute the fact that, at least as proposed in the applications, Icon's signs came within the exemption set forth in CDC section 414-5.9.

[2] Article I, section 8, provides, "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

"The court shall issue a peremptory writ unless the governing body or any intervenor shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as those terms are defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the county comprehensive plan or land use regulations."

After more than 120 days had elapsed without final action on its appeals, Icon pursued the remedy afforded by ORS 215.429, alleging in its mandamus petition that the applications "do not violate a substantive provision of the County's comprehensive plan or land use regulations" and therefore, "under ORS 215.429(5), the Court is required to issue a writ compelling the County to approve the Applications."[3]

At a hearing on Icon's petition, the county advanced a number of theories as to why the court should not issue the peremptory writ, including that the circuit court should sever the safety-sign exemption from the county code based on Article I, section 8, just as the planning director had done.[4] In response, Icon contended that the county "could have and should have raised constitutional issues through a statutory proceeding [for declaratory relief] if they'd wanted to get to this issue" and that the "mandamus statute says what it says. It's pretty clear on its face of what the legislature has, with all due respect, tied your hands, to some degree, in terms of what you can look at. The time and the place to raise these constitutional issues passed."

The circuit court agreed with Icon regarding the scope of the issues before the court at the mandamus stage. In a letter opinion, the court explained that, if it were "to agree with the County's analysis, then the court would have

---

[3] Icon filed two petitions, one pertaining to the first 11 applications and a second pertaining to the six later applications. The cases were consolidated, and, for ease of reference, we refer to Icon's petitions as a single "petition."

[4] The county also argued (1) that the planning director's interpretation of an ordinance's constitutionality does not involve an exercise of discretion and therefore was not a decision on a "permit" subject to the mandamus process; and (2) that the applications lacked the necessary signatures from property owners. The county does not reprise either of those arguments on appeal.

to believe that the legislature didn't know how to include the constitution as a provision for the court to include in its analysis [under ORS 215.429(5)]; clearly we have to give more credit to the legislature than that." The court further explained that, "adopting [Icon's] reading of the statute, and having received no evidence that [Icon's] permit requests violated any substantive provision of the County comprehensive plan or land use regulation, the court is required * * * to issue a peremptory writ requiring County to approve the permits requested by [Icon]."

Anticipating the likelihood of appeal, the circuit court offered an alternative analysis, proceeding "as if the court must look at the constitutional issue." The court explained,

> "This being a Mandamus decision, the County can only rely on the constitutionality (or unconstitutionality) if by following CDC § 414-5.9 the county official having to follow [that code provision] would either violate that official's oath of office or cause the official to be personally liable in some way. *State ex rel. Pierce v. Slusher*, 119 Or 141, 248 P 358 (1926)."

The circuit court reasoned that, in accord with *Slusher*, issuing the requested permits would neither expose county officials to personal liability nor force them to violate an oath of office, because it was *denial* of the permits, not the *issuance*, that would impermissibly restrict speech under Article I, section 8.

## II. ANALYSIS

On appeal, the county contends that the circuit court erred in ruling "that ORS 215.429(5) limits the court's authority to considering only the applicable land use regulations and comprehensive plan provisions and not the Oregon State Constitution." The county asserts that "the plain text [of ORS 215.429(5)] is silent on whether the trial court should apply the Oregon State Constitution, but fundamental principles of law require the court to do so." According to the county, the "fundamental purpose" of the mandamus statute is "no different than other acts controlled by mandamus in general—the court steps into the shoes of the

county and compels the duty that the county was otherwise required to perform."[5]

In response to that assignment of error, Icon focuses on the circuit court's alternative reasoning under the *Slusher* rule rather than the constraints of ORS 215.429 itself. That is, Icon appears to assume, for the sake of argument, that, notwithstanding the lack of any express mention of the constitution in ORS 215.429, circuit courts in actions under that statute retain the same authority to entertain constitutional challenges as courts in other mandamus cases. Icon's disagreement, at least for purposes of this appeal, is instead with the county's formulation of what that retained authority looks like—*i.e.*, what "fundamental principles of law" actually require a court to do in the mandamus context.

Whether the circuit court correctly applied the rule of law announced in *Slusher* under the circumstances of this case presents a question of law; we therefore review the circuit court's ruling for legal error. *Slusher* established a general rule that local officials can challenge the constitutionality of a law in a mandamus action only in narrow circumstances. In *Slusher*, the relators sought a writ of mandamus to compel the sheriff to collect taxes due under the Income Tax Law, which had been repealed by initiative but later re-enacted by the legislature. The sheriff argued that the re-enacted law was unconstitutional, and the relators responded that the sheriff "cannot be heard to say that [the tax law] is unconstitutional, for the reason that he is not a proper party to make such objection." *Slusher*, 119 Or at 144.

The court started its analysis with the "familiar" proposition that "the validity of a statute may not be assailed by one whose rights are not affected by the operation of the

---

[5] We note that the county has not argued on appeal that the mandamus court should have applied the amended version of the sign code, which eliminated the "safety sign" exemption to redress the code's constitutional infirmities. The county tacitly concedes that the "goalpost" statute, ORS 215.427(3)(a), required the mandamus court (and this court) to analyze Icon's applications under the code provisions in effect at the time Icon's applications were complete. Because of that tacit concession, we do not address whether and to what extent the legislature intended for the goalpost statute to apply in circumstances like those present in this case, in which changes to a code or plan appear to be necessary to remedy constitutional defects.

statute." *Id.* The court then examined whether the sheriff, in fact, had "rights that may be prejudiced by his execution of the warrants [for collection of taxes]." *Id.* And, on that question, the court noted a "conflict among the decisions as to whether, in an action in mandamus in which an alternative writ has issued, an officer may question the validity of a statute imposing a duty upon him." *Id.* After describing that conflict, the court adopted the rule, described in 12 *Corpus Juris* 765, that ministerial officers charged with implementing laws can challenge the validity of those laws only in limited circumstances:

> " 'The better doctrine, supported by an increasing weight of authority, is that a mere subordinate ministerial officer, to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute, will not be allowed to question its constitutionality; but that the constitutionality of a statute may be questioned by an officer who will, if the statute is unconstitutional, violate his duty under his oath of office, or otherwise render himself liable, by acting under a void statute.' "

*Slusher*, 119 Or at 145; *id.* at 146 ("In view of the record, and in the light of the above authority and others not cited here, *we are of [the] opinion that the sheriff may be permitted to raise the question of the validity of the act, in so far as he may be affected by enforcing the warrants involved herein.*" (Emphasis added.)).

Thus, under the rule announced in *Slusher*, the county's ability to question the validity of its own ordinances would be limited to circumstances in which issuance of the permit would (1) violate an official's duty under an oath of office or (2) otherwise render the official liable, by acting under a void law.[6]

---

[6] The county has never suggested that the statute—which, again, is silent regarding constitutional challenges—was somehow intended to *expand* the circuit court's ability to entertain constitutional challenges beyond what was recognized in the ordinary mandamus context. We therefore do not address that question, other than to note that, in general, the law limits the circumstances in which local governments may challenge the validity of their own enacted laws through the judicial process; ordinarily, a local government must change its law through the legislative process. *See* Eugene McQuillin, 6 *The Law of Municipal Corporations* § 20:13 (3d ed 2007) ("A municipality cannot judicially question the validity of its own ordinances."); *id.* ("The doctrine of estoppel has been applied against municipal corporations. Estoppel of a municipality has been predicated

In an effort to distinguish its constitutional challenge from that restrictive rule, the county asserts that *Slusher* "concerns the authority of a public official to challenge the constitutionality of performing a *ministerial* duty*," whereas "this case concerns the *quasi-judicial* function of issuing a decision on a permit, not a *ministerial* act." (Emphasis in county's brief.) For that reason, the county looks to cases such as *Li v. State of Oregon*, 338 Or 376, 110 P3d 91 (2005), which, it asserts, recognize that government officials must consider the constitution regardless of whether a court has ruled on the constitutionality of a particular issue. (*See also Cooper v. Eugene Sch. Dist. No. 4J*, 301 Or 358, 723 P2d 298 (1986).)

We are not persuaded by the county's effort to distinguish *Slusher*. Contrary to the county's premise, the underlying decision at issue in this case is not a "quasi-judicial" decision on the part of a local official. Rather, as we have recently reiterated, "the precise effect of the mandamus remedy provided by ORS 215.429 (with respect to counties) and ORS 227.179 (with respect to cities) is to convert what otherwise would have been a discretionary land use decision for a local government into a mandatory approval when the local government does not timely make a final decision." *State ex rel Schrodt v. Jackson County*, 262 Or App 437, 449, 324 P3d 615 (2014). In other words, the circuit court does not simply "step into the shoes of the county" to make a quasi-judicial decision, as the county now argues; rather, a local government "'loses [its] discretion entirely' to approve or deny a permit" when it fails to timely act, and the local government "'*must* approve the application unless it can be demonstrated that approval would violate the comprehensive plan or some other specified land use regulations.'" *Id.*

---

on publication of an ordinance. Thus, where an ordinance is published in pamphlet form by public authority with the other ordinances of the municipality, a city cannot question its validity on the ground that it was not validly adopted." (Footnotes omitted.)); *Benson v. City of De Soto*, 212 Kan 415, 424, 510 P2d 1281, 1289 (1973) ("[U]nder proper circumstances the doctrine of estoppel may be applied against a city so as to preclude the city from denying the validity of its own ordinances."); *Springfield Twp. v. Bensley*, 19 NJ Super 147, 164, 88 A2d 271, 279-80 (Ch Div 1952) ("The municipality itself cannot question the validity of its own ordinance. If it becomes discontent therewith, the remedy lies in repeal or amendment, which course cannot adversely affect rights theretofore acquired under the sanction of the ordinance.").

(quoting *State ex rel Compass Corp. v. City of Lake Oswego*, 135 Or App 148, 151 n 1, 898 P2d 198 (1995); brackets in original; emphasis in *State ex rel Compass Corp.*).

Thus, we agree with Icon (and the circuit court's alternative reasoning) that, even assuming that the county is correct that ORS 215.429 does not alter the circuit court's ability to consider constitutional challenges by a local government, the rule announced in *Slusher* would nonetheless limit the county's ability to question the constitutionality of CDC section 414-5.9 to circumstances in which issuance of Icon's permit would (1) violate an official's duty under an oath of office or (2) otherwise render the official liable, by acting under a void law. And the county has not demonstrated that either of those circumstances exists. In its briefing to us, the county has argued primarily that the *Slusher* rule does not apply; it has not presented any developed arguments as to why we should deem the county to fall within one or both of the exceptions to that rule. Further, it is not entirely clear that the county's exemption violated Article I, section 8.[7] As yet, it does not appear that any Oregon court has addressed what, if any, historical exceptions might apply to holiday-related speech. *Outdoor Media Dimensions*, 340 Or at 288 (content-based restrictions on speech are permissible under Article I, section 8, when such restrictions fall within a "well-established historical exception").

Moreover, even if the county's "safety sign" exemption would itself render the county's sign code susceptible to invalidation in a facial challenge under Article I, section 8, it does not necessarily follow that a decision to issue the permits to Icon under the potentially-invalid code amounts to a violation of Article I, section 8, such that an official

---

[7] Before us, the county has predicated its arguments regarding the constitutionality of its sign code on Article I, section 8, of the Oregon Constitution, and has not made any arguments as to the constitutionality of the code under the First Amendment to the United States Constitution. Accordingly, we are not presented with any First Amendment issues in this case. We note, however, that as of the close of the 2014 term of the United States Supreme Court, it is fairly clear that the "safety sign" exemption would render the county's code vulnerable to invalidation in a facial challenge under the First Amendment. In *Reed v. Town of Gilbert, Ariz.*, ___ US ___, 135 S Ct 2218, ___ L Ed 2d ___ (2015), the Court held that a town's sign code—which, like the county's sign code, categorized signs by the type of information they convey and then subjected each category of signs to different restrictions—was facially invalid under the First Amendment.

would violate an oath of office or risk liability simply by issuing the permits. Although that decision would allow Icon to have larger "holiday signs" than would otherwise be allowed under the development code, that action, in and of itself, would not restrain the speech of Icon or anyone else. At most, it creates the possibility that, to avoid abridging the speech of others by unduly promoting Icon's Memorial Day salutation, the county might be obligated to give similarly situated applicants the same benefit of the larger sign dimensions authorized by that provision, even if the content of those signs otherwise would not render the exemption applicable. *See Reed v. Town of Gilbert, Ariz.*, ___ US ___, 135 S Ct 2218, 2229, ___ L Ed 2d ___ (2015) (explaining that the danger of a "facially content-based statute" is that "future government officials may one day wield such statutes to suppress disfavored speech"). In any event, the county has not demonstrated how the act of granting a permit allowing speech, standing alone, would require any public official to violate an oath of office or expose that official to liability on the ground that the official had contravened the Article I, section 8, prohibition on "restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever."[8]

In sum, the circuit court correctly ruled that Icon is entitled to issuance of its requested permits—*i.e.*, permits for the specific "holiday signs" listed in Icon's applications.[9] We do not understand the circuit court's judgment to go beyond that limited relief, and nothing in our opinion should

---

[8] No party suggests that the county's exemption for safety signs is the type of law that was enacted for the express purpose of suppressing speech, or for discriminating against certain speech or groups. We recognize the possibility that, in that type of case, a county official might risk violating an oath of office, or face liability, for executing such a law. *See, e.g., Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 US 520, 547, 113 S Ct 2217, 124 L Ed 2d 472 (1993) (striking down facially neutral ordinances where record proved that officials enacted provision for the purpose of suppressing a particular religion; explaining that "[l]egislators may not devise mechanisms, overt or disguised, designed to persecute or oppress a religion or its practices. The laws here in question were enacted contrary to these constitutional principles, and they are void"). This is not such a case.

[9] Because we agree with the circuit court's alternative reasoning in this case, and because Icon does not attempt to defend the circuit court's statutory construction analysis, we do not address the court's ruling that ORS 215.429(5) implicitly precludes constitutional challenges.

be construed as granting Icon more than it asked for in its applications.

Affirmed.

# APPENDIX

NOTES:
TOTAL SIGN FACE AREA = 672 SQUARE FEET
OVERALL STRUCTURE HEIGHT = 70 FEET
GROUND TO BOTTOM OF SIGN FACE = 56 FEET

48'

## Celebrate the Holiday Safely

Happy Memorial Day

(Demonstrates shielded
Lamp Lighting Pattern)

14'

IconGroupe

70'

EXTERNAL ILLUMINATION
400 Watt Shielded Lamps

54'

Steel Support Column

Grade at Column

See Plans

CONCRETE FOOTER

See Plans

| IconGroupe, LLC<br>1941 1st Avenue S<br>Suite 3A<br>Seattle, WA 98134 | ELEVATION DRAWING | |
| | THIS ELEVATION SUPPLIED FOR REFERENCE ONLY. PLEASE REFER TO ENGINEERED DRAWINGS AND CALCULATIONS. | |

000673